SEMPLE TRUCK RENTAL & LEASING, INC. *vs.* P & B
WHOLESALERS, INC., & another.

Suffolk.   January 16, 1981. — December 14, 1981.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Insurance*, Motor vehicle insurance.   *Motor ·Vehicle*, Insurance.

Under G. L. c. 90, § 34O, as amended through St. 1976, c. 1, § 1, the
lessor of a truck could not recover in tort against either the lessee or its
employee for damage caused to the truck by the employee's negli-
gence. [765-767]

Where a corporation, as part of a truck rental agreement, obligated itself
to pay for "all overhead damages," it was liable under the contract to
the lessor for damage to the truck caused by the negligence of an em-
ployee of the corporation, in attempting to drive the truck under a low
bridge, even though the corporation was exempt from tort liability
under the no-fault motor vehicle insurance law.   [767]

CIVIL ACTION commenced in the Municipal Court of the
City of Boston on September 27, 1976.

Upon removal to the Superior Court, the case was heard
by *Belmonte*, J., a District Court judge sitting under statu-
tory authority.

*Joseph C. Delcore* for the defendants.

*Philip S. Iuliano* for the plaintiff.

ARMSTRONG, J.   The plaintiff rented a truck to the corpo-
rate defendant, whose driver, Greenburg, negligently drove
it under (or, more accurately, attempted to drive it under) a
low bridge on Storrow Drive in Boston.   It cost the plaintiff
$3,500 to replace the damaged truck body.   A judge sitting
in the Superior Court under St. 1976, c. 303, trying the case
without a jury, ordered judgment to be entered in that
amount against Greenburg, based on his negligence, and
against the corporate defendant, based on the principle of

respondeat superior. The case is before us on the defendants' appeal from the ensuing judgment.

The principal issue argued in the appeal (and the only one which warrants discussion) is that the defendants, under the law in effect at the time of the collision, enjoyed an immunity from tort liability regarding damage to the truck. The collision occurred in June, 1976, when the so called "no-fault property damage law," G. L. c. 90, § 34O, as amended through St. 1976, c. 1, § 1, was still in effect.[1] In relevant part that law provided that "[e]very owner, authorized operator or other person legally responsible for the operation of any vehicle to which this section applies, regardless of the coverage option or deductible option elected by the policyholder, shall be exempt from all liability every property protection insurance policyholder and his insurer might otherwise have been entitled to claim, by subrogation or otherwise, for accidental loss of or damage to any vehicle to which this section applies. This exemption from liability shall not affect tort rights and subrogation rights against persons not so exempted."

Subject to exceptions not here material (see G. L. c. 90, § 1A; *Chipman* v. *Massachusetts Bay Transp. Authy.*, 366 Mass. 253, 257 [1974]), § 34O made $5,000 of property protection insurance, or an equivalent liability bond, compulsory for all motor vehicles registered in the Commonwealth. Compare *Lumbermens Mut. Cas. Corp.* v. *Bay State Truck Lease, Inc.*, 366 Mass. 727, 729 (1975), with *Pinnick* v. *Cleary*, 360 Mass. 1, 6 (1971). That insurance covered liability for damages caused by the insured vehicle to any class of property other than vehicles covered by property protection insurance. As to covered vehicles, the tort system was suspended. The owner of a vehicle damaged by collision who would previously have had a tort remedy against a driver exempted from liability by § 34O received no compensation for the damage unless he provided for it by his

[1] The no-fault property damage law was repealed by St. 1976, c. 266, § 7, effective January 1, 1977.

own insurance. He was required to select one of three options: (1) "All Risk Coverage," which, subject to deductibles, protected the insured vehicle against any damage by collision or upset, regardless of fault; (2) "Restricted Coverage," which, subject to deductibles, protected the insured vehicle in cases where the owner would have been entitled to recover in tort except for the application of the exemption from tort liability;[2] or (3) "No Coverage for Own Car".[3] The plaintiff carried property protection insurance on its fleet of rental vehicles and elected the second option, restricted coverage. It also elected, however, to reduce the cost of the coverage by the use of a large deductible, apparently applicable to the entire fleet, which had the effect of depriving the plaintiff of insurance compensation for the damage caused to the vehicle by Greenburg's negligence.[4]

The plaintiff relies heavily on the final sentence, quoted earlier, of the portion of § 34O creating the immunity: "This exemption from liability shall not affect tort rights and subrogation rights against persons not so exempted." But Greenburg was unambiguously a person who *was* exempted, because he was an "authorized operator" of the truck and the truck fell within the phrase "any vehicle to which this section [i.e., § 34O] applies." The exemption extended to "all liability . . . for accidental . . . damage to *any vehicle* to which this section applies" (emphasis sup-

---

[2] There were several specific situations, not here applicable, in which the insured could collect on the restricted coverage option: these included cases where the insured vehicle was struck in the rear by another vehicle moving in the same direction; cases in which the insured vehicle was lawfully parked and was struck by another vehicle; cases in which the operator of the vehicle causing damage to the insured vehicle was convicted, as a result of the incident, of driving while under the influence of alcohol or drugs, driving the wrong way on a one-way street, or speeding.

[3] Despite the use of the word "car" in labeling the option, the description thereunder makes it clear that the no-coverage option was available to any motor vehicle, not only passenger cars.

[4] The property protection insurance policy would, of course, have paid for damages Greenburg inflicted on the bridge up to the policy limit. No deductible was applicable to that coverage.

plied). We are not at liberty to read the emphasized words as if they said, "any *other* vehicle."

The scheme of the no-fault property damage law was clear. If the plaintiff wished to protect its truck, it was its obligation to place insurance that would do so. It could have been protected under either the all risks option or the restricted coverage option, but it elected a deductible which left the loss unprotected. Section 340 was explicit on the point that the tort exemption stood, regardless of the deductible option chosen by the policyholder.

It follows that neither Greenburg nor the corporate defendant can be held in tort to answer for the loss. Nevertheless, the corporate defendant, as part of the written rental agreement, obligated itself to pay for "all overhead damages," and no reason is advanced why it should not be held liable on its agreement. No amendment of the complaint is necessary: it sounded in contract, based on the written agreement. Doubtless the reason the judge did not address himself to the contract claim was that it seemed superfluous, given his sustaining of the tort claim; but his findings, combined with the rental agreement itself, which is part of the record, show that judgment against the corporate defendant is required on contract principles. No argument was advanced, here or below, that Greenburg could be found liable on the agreement. Accordingly we do not consider that possibility.

The judgment, in so far as it applies to Greenburg, is reversed, and the action is to be dismissed as to him. The judgment, in so far as it applies to P & B Wholesalers, Inc., is affirmed.

*So ordered.*