RUSSELL L. PETERSON & another,[1] trustees,[2] & another[3] *vs.*
CYNTHIA SILVA & others.[4]

Suffolk. November 6, 1998. - January 27, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Insurance,* Insured, Subrogation, Property damage. *Subrogation. Indemnity.*
*Landlord and Tenant,* Lease as contract.

In an action in which an insurer claimed indemnification, pursuant to a general
indemnification clause in a standard form residential lease, from allegedly
negligent tenants for losses sustained due to a fire in residential premises, a
Superior Court judge correctly allowed the tenants' motion for summary
judgment, where there was no express provision in the lease establishing
the tenants' liability for loss from a negligently started fire and where other
provisions in the lease expressed the parties' intent that the landlord bear
the burden of providing insurance for damage to the premises due to fire.
[752-754]

CIVIL ACTION commenced in the Superior Court Department on
March 6, 1995.

The case was heard by *John C. Cratsley,* J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Robert A. Koditek* for the plaintiffs.

*Joseph F. Murray (Peter H. Noone* with him) for Sheryl
Stevoff & another.

ABRAMS, J. The plaintiff Greater New York Mutual Insurance
Company (GNY) seeks to recover from the defendants, Cynthia
Silva and Sheryl Stevoff, the money that GNY paid to its
insured, Stanton Realty Trust (Stanton). GNY's claim arose
from a fire in a residential apartment building owned by Stan-

[1]Donato F. Puzzuti.

[2]Of the Stanton Realty Trust.

[3]Greater New York Mutual Insurance Company.

[4]Nick Stevoff, Sheryl Stevoff, and Ronald Silva.

ton. GNY paid Stanton $201,271.93 for property damage to the building. GNY then sought to recover the amount it paid from the defendants, who were tenants at the time of the fire. GNY claimed that the defendants negligently started the fire and that it is entitled to indemnification based on a clause in the defendants' lease, which is set forth in the margin.[5]

The lease also contains two provisions regarding insurance. The first provides that it is the "Lessee's own obligation to insure his personal property." The second encourages the defendants to buy apartment insurance and disclaims responsibility for "losses in Lessee's premises." Beneath the lease's signature lines is the following notice: "Tenant: Subject to applicable law, the landlord will provide insurance for up to $750 in benefits to cover the actual cost of relocation of the tenant if displaced by fire or damage resulting from fire." Stanton paid fire insurance premiums to GNY out of the rental income received from its tenants.

A judge in the Superior Court allowed the defendants' motion for summary judgment. The judge reasoned that the lease did not explicitly establish the tenants' liability for negligently caused fires. The plaintiff appealed. We transferred this case to this court on our own motion. We affirm the judgment.

It is well established that "an insurer cannot recover by means of subrogation against its own insured." *Safeco Ins. Co.* v. *Capri*, 101 Nev. 429, 431 (1985). See *Alaska Ins. Co.* v. *RCA Alaska Communications, Inc.*, 623 P.2d 1216, 1217 (Alaska 1981). If the defendants are insureds with Stanton, then GNY cannot recover from them. We conclude the tenants are insureds along with Stanton.

In *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995), the lease provision in issue required the tenant to yield up the premises in the same condition "as the same were in at the commencement of the term . . . damage by fire or other casualty . . . only excepted." We held that the yield-up clause shielded the tenant from liability for fire loss or damage caused by negligence. *Id.* at 713-714. There was no

---

[5]The lease was a standard form lease. Clause 16 of the lease provided in part: "Loss or Damage. The lessee agrees to indemnify and save the Lessor harmless from all liability, loss or damage arising from any nuisance made or suffered on the leased premises by the Lessee, his family, friends, relatives, invitees, visitors, agents, or servants or from any carelessness, neglect or improper conduct of any such persons."

yield-up clause in the lease between Stanton and the defendants. In *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, 419 Mass. 704, 706 (1995), we concluded that the language of the lease required the tenant to contribute to the premium for the policy. Nothing so explicit accompanies the lease before us.

Other courts have decided cases involving leases more similar to the one at issue. In *New Hampshire Ins. Group* v. *Labombard*, 155 Mich. App. 369, 377 (1986), the court held that the tenant owed no duty to the insurer because there was no "express and unequivocal agreement" holding the tenant liable to the lessor for negligently caused fire damage.[6] The Supreme Court of Nevada, in *Safeco Ins. Co., supra* at 431, similarly held that a tenant is not liable on a subrogation claim when no express provision of the lease establishes the tenant's liability for negligently started fires.[7] The logic of these cases, as well as the policy implications of our own, persuades us that, absent an express provision in a lease establishing a tenant's liability for loss from a negligently started fire, the landlord's insurance is deemed held for the mutual benefit of both parties. See *Alaska Ins. Co., supra* at 1218; *Safeco Ins. Co., supra.* The tenants therefore defeat the subrogation claim.

The lease at issue provided that the defendants would indemnify Stanton from all loss resulting from their carelessness, neglect, or improper conduct. There is no express provision in the lease establishing the defendants' liability for the negligently caused fire. We agree with the Superior Court judge that the lease's general language is not sufficient to create liability in the tenants.

This conclusion is bolstered by the other provisions of the lease. The clauses dealing with insurance imply that the tenants are liable only for losses to their personal property, and that Stanton is responsible for all other property damage. Moreover, the notice regarding relocation benefits appeared in the lease

---

[6]That lease contained a general yield-up clause requiring the tenant to yield up the premises "in like condition as when taken, reasonable wear and damage by the elements excepted." *New Hampshire Ins. Group* v. *Labombard*, 155 Mich. App. 369, 371 n.1 (1986). There was no express exception for fire damage as there was in *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995). The lease also required the landlord to repair the premises if they became partially "untenantable" by fire. *New Hampshire Ins. Group, supra.*

[7]The lease contained a general yield-up clause. It also required the landlord to maintain fire insurance. *Safeco Ins. Co.* v. *Capri*, 101 Nev. 429, 431 (1985).

pursuant to G. L. c. 175, § 99, Fifteenth A, which requires a landlord who has purchased fire insurance to notify tenants of their right to relocation expenses. The presence of the notice therefore is an express manifestation of the landlord's intent to bear the burden of providing fire insurance.

Extending fire insurance coverage to the occupying tenants comports with public policy and with the realities of apartment renting. As another court has stated, "Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy." *Sutton* v. *Jondahl*, 532 P.2d 478, 482 (Okla. Ct. App. 1975). This reasoning is echoed in R.E. Keeton, Insurance Law § 4.4(b), at 210 (1971): "Probably it is undesirable, from the point of view of public interest, that the risk of loss from a fire negligently caused by a lessee be upon the lessee rather than the lessor's insurer. Allowing the lessor's insurer to proceed against the lessee is surely contrary to expectations . . . . [P]erhaps [the courts] should at least adopt a rule against allowing the lessor's insurer to proceed against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous."

Stanton could have insisted that the defendants maintain fire insurance. It did not. The reasonable expectation of the defendants, and all tenants, is that their rent includes the landlord's cost for fire insurance, and that any damage to the property from fire is covered by that insurance.

It surely is not in the public interest to require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy.

*Judgment affirmed.*