Gershengorn, J.
The plaintiffs, through their insurance company, Quincy Mutual Fire Insurance Company (“Quincy”), have filed this complaint with claims arising from a fire that occurred on January 23, 1998 at a dwelling they owned, located at 43 Burnham Street, Belmont, Massachusetts (“the property”).[2] In Count III of its Amended Complaint Quincy seeks contribution from the defendant, Commerce Insurance Co. (“Commerce”), for funds paid to the plaintiffs pursuant to their homeowners insurance policy. Commerce has moved for summary judgment on Count III. Upon consideration of the complaint, all motion papers submitted by the parties, and oral arguments, the court ALLOWS Commerce’s Motion for Summary Judgment.
BACKGROUND
On January 23, 1998, a dwelling owned by the plaintiffs, Antonio and Elena Rizzo (“the Rizzos”), located on the property, caught fire and suffered significant damage.[3] At the time of the fire, Mrs. Sarah Ann Charvis (“Charvis”) was a tenant of the Rizzos living at the property. Charvis had been a tenant of the Rizzos living at the property since 1991. Despite approximately seven years as a tenant, Charvis had only signed a written lease agreement for the first year of her tenancy. At the time of the fire, Charvis had procured an insurance policy with Commerce (“the Charvis policy”) that provided coverage for her “residence premises” listed as 43 Burnham Street #C-2, Belmont, Massachusetts.[4]

DISCUSSION

Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, 424 Mass. 226, 232 (1997). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue and the fact that it is entitled to a judgment in its favor. Pederson v. Time Inc. 404 Mass. 14, 16-17 (1989). A moving party which does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving parly’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The opposing party cannot rest on the pleadings or on mere assertions of disputed facts to defeat the summary judgment motion. “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact. . .” Pederson, 404 Mass. at 17. When reviewing a summary judgment record, the court credits facts in the light most favorable to the nonmoving party. Bisson v. Eck, 430 Mass. 406, 407 (1990); Gray v. Giroux, 49 Mass.App.Ct. 436, 437 (2000).
Commerce contends that absent specific language in a written lease establishing Charvis’ liability for a negligently started fire, the Supreme Judicial Court decision in Peterson v. Silva, 428 Mass. 751 (1999), deems her a co-insured on the Rizzo policy and prohibits the instant action for contribution. Quincy, however, contends that the holding in Peterson is not applicable to the instant action because they seek contribution from Commerce pursuant to a theory of co-insurance. Quincy asserts that both the Rizzo policy and the Charvis policy provide coverage for the property loss and therefore both policies are liable for the loss. Although Quincy does not dispute the factual background alleged by Commerce, it argues that any question of coverage for the Rizzos is a material question of fact and therefore summary judgment is inappropriate.
Despite Quincy’s contentions the Court is not persuaded that its theoiy of co-insurance renders Commerce liable for contribution. In proffering its theory *404 of co-insurance Quincy initially assumes that the Charvis policy provides coverage to the Rizzos as landlords of the property. Moreover, Quincy relies on the decisions in Mission Ins. Co. v. U.S. Fire Ins. Co., 401 Mass. 492, 499 (1988), and Aetna Casualty & Surety Co. v. The Home Ins. Co., 44 Mass.App.Ct. 218 (1998), to support its premise that conflicting “other insurance” clauses obligate each insurer to contribute to the loss. The Court not only disagrees with Quincy’s interpretation of the Charvis policy but also finds that its reliance on Mission and Aetna is misplaced.
In determining whether the Charvis policy provides coverage to the Rizzos the court must examine the policy as a whole. Woogmaster v. Liverpool & London & Globe Ins. Co., 312 Mass. 479, 481 (1942). Quincy contends that the Definition section and the Additional Coverages section of the Charvis policy, when read in conjunction with one another, provide coverage and “replacement costs” to the Rizzos as landlords of the “resident premises.”[5] While the aforementioned sections do provide coverage for damages to the “resident premises,” the cover page of the Charvis policy clearly establishes that it does not provide coverage for the “Dwelling” or “Other Structures.” The cover page clearly limits coverage to Charvis’ personal property, loss of use, personal liability and medical payment to others. Moreover, the Liability Coverages section of the Charvis policy merely requires that Commerce indemnify Charvis for damages for which she is legally liable.[6] As Commerce correctly points out, the court’s holding in Peterson clearly establishes that absent “an express provision in a lease estabfishing a tenant’s liability for loss from a negligently started fire, the landlord’s insurance is deemed held for the mutual benefit of both parties." Peterson, 428 Mass. at 753. In the instant case, Quincy has failed to allege the existence of a lease establishing Charvis’ liability and failed to allege any negligent action attributable to Charvis. In light of these glaring omissions the Court refuses to hold Charvis legally liable for damage to the properly.
The Court also rejects Quincy’s contention that the “other insurance" clauses contained within the Rizzo policy and the Charvis policy obligate each insurer to contribute toward the loss.[7] In Mission Ins. Co. v. U.S. Fire Ins. Co., 401 Mass. 492 (1988), the plaintiff, an automobile insurer, sought a declaration requiring the defendant, an excess insurer, to contribute to a tort claim settlement negotiated by itself and two other primary insurers. Mission, 401 Mass. at 492. Similarly, in Aetna Casualty & Surety Co. v. Home Ins. Co., 44 Mass.App.Ct. 218 (1998), an automobile insurer sought a declaration that an other excess insurer must exhaust its policy before seeking contribution. Aetna, 44 Mass.App.Ct. at 220. In both Mission and Aetna the court held that conflicting “other insurance” clauses contained within the excess insurance policies were mutually repugnant and as such required both excess insurers to contribute to settlements equally. Mission, supra at 499; Aetna, supra at 223. The instant action is distinguishable from both Mission and Aetna, because unlike the plaintiffs in Mission and Aetna, Quincy, a primary insurer, seeks contribution from an insurer who is not legally liable for the loss. Commerce is neither an excess insurer nor does its “other insurance” clause conflict with Quincy’s liability for the loss. Accordingly, Quincy’s reliance on the holdings in Mission and Aetna is misplaced.

ORDER

Based on the foregoing, it is hereby ORDERED that the defendant’s, Commerce Insurance Co.’s, Motion for Summary Judgment is ALLOWED.

 Pursuant to its Amended Complaint Quincy seeks relief from Federal Pacific Co. under the theories of Breach of Warranty (Count I) and Negligence (Count II). It seeks relief from Groupe Schneider Co/Schneider Electric (Count IV Breach of Warranty) (Count V Negligence), American Circuit Breaker Co. (Count VI Breach of Warranty) (Count VII Negligence) and American Circuit Breaker & Switchgear Co. (Count VIII Breach of Warranty) (Count IX Negligence).

 Quincy compensated the Rizzos two hundred eighty-nine thousand five hundred two dollars ($289,502.00) for property damage caused by the fire.

 Section I — Perils Insured Against, paragraph 1 of Charvis’ Commerce policy provides coverage for loss to the property caused by fire or lightning.

 The Charvis policy defines “Residence premises” as “(a) The one family dwelling, other structures and grounds; or (b) That part of any other building where you reside and which is shown as the ‘residence premises’ in the declarations." Quincy contends that this definition, when read in conjunction with Additional Coverages 1.) Debris Removal, 2.) Reasonable Repairs, 3.) Trees, Shrubs and Other Plants, 4.) Fire Department Service Charge, 5.) Property Removed, 9.) Glass or Safety Glazing Material and 10.) Building Additions and Alterations, insures the Rizzos, as landlords, for direct physical loss to the property.

 Section II — Liability Coverages of the Charvis policy provides:
COVERAGE E — Personal Liability. If a claim is made or a suit is brought against an “insured” for damages because of “bodily injury” or “property damage” caused by an “occurrence” to which this coverage applies, we will:
1. Pay up our limit of liability for the damages for which the “insured” is legally liable. Damages include prejudgment interest awarded against the Insured; and . . .

 Section I — Conditions, paragraph 7, of the Charvis policy provides:
Other Insurance. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.
Paragraph H of the Rizzos' policy provides:
OTHER INSURANCE
1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on It or not. But we will not pay more than the applicable Limit of Insurance.